OSCAR C. OLSON AND RUBY L. OLSON, HIS WIFE, ET AL., PLAINTIFFS AND APPELLANTS, *v.* SIGNAL DRILLING AND EXPLORATION INC., AN OKLAHOMA CORPORATION ET AL., DEFENDANTS AND RESPONDENTS.

No. 11342.
Submitted March 5, 1968. Decided April 10, 1968.
Rehearing Denied May 9, 1968.
439 P.2d 763.

Bjella, Jestrab, Neff & Pippin, Frank F. Jestrab (argued), Williston, N. D., for plaintiffs and appellants.

Anderson, Symmes, Forbes, Peete & Brown, Raymond K. Peete (argued), Billings, for defendants and respondents.

MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law, the court sitting without a jury. The judgment was for cancellation of an oil and gas lease unless drilling of a well was commenced in thirty days. The judgment also found no damages due plaintiff, but awarded costs. The plaintiffs appealed. No appeal was made by defendants.

Plaintiffs, appellants here, are landowners who will be referred to simply as the lessor. The defendants have diverse interests including the working interest in an oil and gas lease and will be referred to simply as the lessee.

The lease of the West one-half of Section 24, T. 32 N., R. 58 E., M.P.M. contained 320 acres. This half section lease became two parts, the NW¼ and the SW¼, each containing 160 acres. These quarter sections were assigned tract numbers, and became numbers 28 and 38 respectively. This area is in the Dwyer Field in Sheridan County. In October 1960, the Oil and Gas Commission established a 160 acre spacing, the permitted well location for each spacing unit would be in the approximate center of the SE¼ of each spacing unit of 160 acres.

The lessee of Tract 28 drilled a well which became a producing oil well on March 6, 1961, and is known as Olson No. 1. It has been producing since. Tract 38, however, was not drilled, and is the subject of this action.

The action was for a partial cancellation of the lease, that is, as to Tract 38, and as mentioned before the judgment decreed cancellation. The appeal, however, concerns that part of the claim for relief for damages for breach of an implied

covenant to protect the leased premises from drainage by strangers to the lease.

The district court having ordered cancellation of the lease on Tract 38 unless drilling were commenced within 30 days, and no appeal from this having been made, we are only concerned with the damage feature. To put the issue as simply as possible it is this: The lessor argues he has been damaged by drainage by strangers to the lease, viz., wells in the adjacent ¼ sections, Tract 27, Tract 39, and Tract 29. More specifically that his Tract 38 has been damaged. (Tract 28, belonging to the lessor, is producing).

The lessee responds under these three general headings:

(1) That the lessor failed to notify or demand the drilling of a well on Tract 38 or to notify the lessees of an alleged breach of the implied covenant;

(2) Lessee acted as an ordinary prudent operator in not drilling a well on Tract 38; and

(3) Proof of damages is lacking.

The district court found, in effect, that the lessor had failed to prove damages.

We shall approach our discussion in what may seem to be a rather tortuous route. We say tortuous route because the usual and normal discussion of lease rights and cancellations for failure to drill are absent here. The lessee had paid rentals and royalties and had apparently done everything required except to drill Tract 38. The Dwyer Field originally comprised some 37 sections of land. The discovery well was completed January 8, 1960. In 1961, fourteen wells were completed. In 1962, five wells were completed and the last well in December 1962 was a dry hole. In the Spring of 1963 the lessee here decided not to drill further. Wells in the Dwyer Field were expensive and whether commercial production could be had on Tract 38 is at least questionable. The lessee determined such commercial economic production could not be had.

The Dwyer Field, with a water drive pressure, runs generally southwest to northeast. The Field has a common source of supply or a "pool" and the drainage pattern is circular. The limits of the Field have been fairly well established. In the SE¼ of the NE¼ of Section 26 a well was abandoned and is used to dispose of salt water and to maintain pressure. In the NW¼ of the NE¼ of Section 25, "an exception" location was granted (being a direct diagonal offset of Tract 38), and it resulted in a "dry hole". The geologists and engineers testified that Tract 38 likely had oil under part of it, that it was being drained by wells in Tracts 28, 27, 29 and 39, all lying immediately to the north and east. These same witnesses generally agreed that Tract 28, Olson No. 1, was also draining other adjacent tracts. The conclusion of the district court generally is that Tract 28 was draining Tract 38, and the lessor being the same, such lessor was not being damaged; or put another way that, under the only evidence presented, the lessor of Tracts 28 and 38 was getting all he was entitled to. Going back to Tract 38 having oil under it, the geologists and engineers for the lessee concluded that drilling Tract 38 in the approved location would result in a "dry hole" or at best a non-economic well.

Now then, as to the evidence presented on the matter of damages by drainage, the only witness to support the burden of proof on the loss by failure to drill on Tract 38 and whether such a well would be an economic undertaking was one Dois Dallas. We should note here that the lessor, appellant, takes great pains to distinguish between an "implied covenant to protect the acreage from drainage" from an "implied covenant to develop." He refers us to Sullivan's Handbook on Oil and Gas, pp. 169-191. As we view the issue, and as the district court viewed it, we need not carefully distinguish the nature of the implied obligations.

Mr. Dallas, the lessor's witness, used a mathematical computation based upon:

(1) an estimate of reserves of an Engineering Committee report;

(2) an estimate of reserves from the Oil and Gas Commission report; and

(3) an Engineering Committee's proposed parameter percentages.

The Engineering Committee mentioned was a group of engineers representing the working interests in the Dwyer Field, including the lessee here, who agreed upon and proposed parameter percentages. This Committee assigned, in percentages to the nearest tenth, 3.8 percent to Tract 38 and 7.7 percent to Tract 28 for a total of 11.5 percent to the leased premises. The Committee's report was made in anticipation and preparation for a "Unitization Agreement" which was never adopted.

Using the 3.8 percent as to Tract 38, the lessor then mathematically projected that percentage to the reserves and reasoned that this projected amount, giving allowance for certain other factors, was the loss by drainage and proof of damage.

The respondent lessee argues strenuously, and objected strenuously to the testimony on grounds of competency and hearsay, that such evidence was no proof at all, but we need not rule on that.

The district court, as to these matters made the following findings:

"XII. That Tract 38 is being drained by Tract 28 and other tracts not owned by plaintiffs and defendants.

"XIII. That the defendants, together with their operators * * * met with the engineers of the different corporations having operating oil interests in the Dwyer Field for the purpose of formulating possible unit parameters for the Dwyer Field and participated in a meeting on June 16, 1964, of the Dwyer Field Engineering Committee, where possible unit parameters were agreed upon by the participants, including plaintiffs. * * *

"XVI. That the unit parameters so agreed upon were published and submitted to the operators and owners of all the field and was not approved by all the operators; that subsequent engineering committees have met, and the latest proposed unit agreement would completely eliminate Tract 38 as a participating unit in the Dwyer Field.* * *

"XVIII. That for the purpose of these Findings, the Court has adopted the parameters * * *, said parameters being 7.6769 percent as to Tract No. 28 and 3.7385 percent as to Tract No. 38, making a total parameter of 11.4154 percent, the parameter assigned to the lands described."

Observing first, that we are unimpressed with the rationale of parameters that were never adopted as proof of anything, yet we fail to see wherein the district court was in error in its result. The lessee, plaintiff, would adopt the parameter percentages individually for each tract, and use only one of them to prove loss on Tract 38, but ignore the other on Tract 28 which would and did prove that actual production on Tract 28 was more than the combined parameter percentages.

Olson No. 1 on Tract 28, between March 1961 and July 1967 actually produced 353,164 barrels of oil out of a total Dwyer Field production of 3,524,182 barrels, or an average ten plus percent. The parties would not stipulate to the actual figures over-all, but it was admitted and the district court found, that the total production of Olson No. 1 from Tract 28 was in excess of the total parameter percentages of both Tracts 28 and 38. *Assuming* that the parameter percentages were proper evidence in this case, then they must be applied consistently; that is, the lessor, plaintiff, would be entitled only if the unit-iization agreement were in fact adopted. In that event he would have received less than actual production on Tract 28 and more than actual production on Tract 38. Thus, under the theory used, the trial court was correct in adding the two parameter percentages to determine whether or not there was

any damage caused by the breach of the implied covenant to protect.

We are aware that we have not cited any-case law to support our thesis, but none is required. What we have done is to follow through on the lessor's own theory and evidence, but require it to be consistently applied as did the trial court. After the trial court's initial findings, supplemental findings found as before stated, that the actual production of Olson No. 1 on Tract 28 exceeded the total parameter percentages assigned on the proposed unitization formula for both Tracts 28 and 38, and thus there were no damages proven.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON, and LeROY L. McKINNON, District Judge, concur.

HONORABLE LeROY McKINNON, District Judge, sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON.